**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IVORY NUTALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:14 CV 4738 |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| RESERVE MARINE TERMINALS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is a motion for summary judgment filed by Defendant Reserve Marine Terminals ("Reserve Marine" or "Defendant"), seeking dismissal of Plaintiff Ivory Nutall's ("Nutall" or "Plaintiff") claims against it. Nutall alleges that Defendant discriminated against him on the basis of a perceived disability and his age, and retaliated against him for filing a workers' compensation claim, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq,. the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-103(I), the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, and Illinois common law. For the reasons set forth below, we grant Defendant's summary judgment motion in part and deny it in part.

## FACTUAL BACKGROUND

We begin with the pertinent facts. Unless otherwise noted, the facts described herein are undisputed and culled from the parties' Local Rule 56.1 statements of fact and exhibits. (*See* Def. Rule 56.1 Statement of Facts, Dkt. No. 40 [*hereinafter* Def. SOF]; Pl. Rule 56.1 Statement of Facts, Dkt. No. 46 [*hereinafter* Pl. SOF].) To the extent that either party objected to certain

statements of fact or exhibits, we shall rely on admissible evidence only for the purposes of our analysis. *See e.g., Hemsworth v. Quotesmith Com., Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial."). Accordingly, we decline to address objections specifically unless warranted.

## A. Facts

### a. General Background

In October 1998, Plaintiff was hired by Reserve Marine as a Heavy Equipment Maintenance Mechanic. (Def. SOF ¶¶ 7–8.) As a Heavy Equipment Maintenance Mechanic, Plaintiff was responsible for maintaining and repairing equipment used at Reserve Marine to separate and process scrap. (*Id.* ¶ 8.) In order to maintain and repair this equipment, Plaintiff climbed ladders, twisted, bended and kneeled, swung sledgehammers, removed faulty engines, changed oil and filters, lifted the hoods of various vehicles, changed six-foot tires and performed a variety of other tasks.[1] (*Id.*)

### b. Plaintiff's Injury and Subsequent Treatment

Plaintiff was severely injured on December 3, 2011 when his back gave out after lifting the hood to a large crane. (*Id.*) Plaintiff was helped off of the crane and immediately went to the emergency room. (*Id.* ¶ 12.) Following this accident, Plaintiff was unable to work and filed a workers' compensation claim on December 8, 2011. (*Id.*; Pl. SOF ¶ 65.) Plaintiff has not

---

[1] Defendant submitted a written physical job description for the Heavy Maintenance Mechanic position. (Def. SOF ¶ 9.) Plaintiff objects to the document as lacking authentication. (Pl. Resp. Def. SOF ¶ 9.) As discussed later, we find that, even if Defendant's job description is admitted into evidence, there is a genuine issue of material fact as to the essential job functions of the Heavy Equipment Maintenance Mechanic position, and thus, do not rule on the document's admissibility at this time.

worked at Reserve Marine since his injury on December 8, 2011.[2] (Def. SOF ¶ 42.) Before his December 2011 injury, Plaintiff had never taken more than a day or two off work for any injury, with any employer.[3] (Pl. SOF ¶ 66.) From December 2011 through March 2013, in attempts to remedy his back pain and get back to work, Plaintiff received multiple spinal injections, underwent physical therapy, and wore a neck to waist brace for 23 hours a day. (Pl. SOF ¶ 68.) None of these remedies proved effective, so on March 6, 2013, Plaintiff consulted with Dr. Kern Singh, a spinal surgeon at the Rush University Medical Center, concerning his injury. (Def. SOF ¶ 16, Pl. SOF ¶ 68.) A little over three months later, on June 25, 2013, Dr. Singh performed a lumbar laminectomy on Plaintiff. (Def. SOF ¶ 18.)

### c. Plaintiff's Communication with Defendant concerning his Injury

Following his surgery in June 2013, Plaintiff continued to meet with Dr. Singh and Dr. Singh provided status reports to Reserve Marine's workers' compensation office after each appointment with Plaintiff. (Pl. SOF ¶ 69.) Dr. Singh's office provided status reports from March 6, 2013 through November 6, 2013. (*Id.*) On March 6, 2013, after his initial examination, Dr. Singh reported to Defendant's workers' compensation office that Plaintiff was unable to work at that time due to his injury. (Def. SOF ¶ 17.) On July 29, 2013, Dr. Singh informed Defendant's workers' compensation office that he had imposed a ten pound restriction on Plaintiff. (*Id.* ¶ 19.) Based on this ten pound restriction, Plaintiff was unable to perform his job duties at that time, as well. (*Id.*) Later, in an August 23, 2013 status report, Dr. Singh

---

[2] Defendant claims that Plaintiff was not terminated and is "on leave," but it is undisputed that he has not worked at Reserve Marine since his injury in December 2011. (Def. SOF ¶ 42.)

[3] Dennis Stropko, Defendant's health, safety and environmental manager, believed Plaintiff suffered from back problems prior to his December injury. (Pl. SOF ¶ 71.) Stropko stated that he believed Plaintiff called off work because his back was sore and that Plaintiff wore a weight belt because of a chronic history of back issues/problems. (*Id.*) In reality, Defendant has no record of Plaintiff ever calling off due to back pain prior to his December 2011 injury and Plaintiff wore a weight brace to protect his back. (*Id.* ¶ 72.)

informed the workers' compensation office that Plaintiff had a dull ache in his back and was taking ibuprofen and Flexeril for pain. (*Id.* ¶ 20.) In this same report, Dr. Singh imposed a fifteen pound restriction on Plaintiff's lifting, pushing and pulling. (*Id.*) Plaintiff still was unable to work. (*Id.*) Additionally, Dr. Singh informed the workers' compensation office that he instructed Plaintiff to complete two to four weeks of work conditioning with a physical therapist and to submit to a "functional capacity exam" to "determine the safe limits of Plaintiff's physical ability." (*Id.*)

To complete his work conditioning and functional capacity exam, Plaintiff reported to David Noble at ATI Physical Therapy. (*Id.* ¶ 23.) After Plaintiff was referred to ATI, ATI also sent updates to Defendant's workers' compensation office beginning in October 2013. (Pl. SOF ¶ 69.) Mr. Noble conducted Plaintiff's physical capacity exam on October 4, 2013. (Def. SOF ¶ 23.) After the examination, Mr. Noble reported to Dr. Singh that as of October 4, Plaintiff's capabilities fell below the medium physical demands level, the demand level for a heavy equipment mechanic[4]. (*Id.*) On November 4, 2013, Marine Reserve's workers' compensation office received another report from Dr. Singh's office. (*Id.* ¶ 24.) This report indicated that Plaintiff was in moderate discomfort and was still taking ibuprofen and Flexeril for pain. (*Id.* ¶ 21.) As of the November 4 report, Plaintiff was still restricted to fifteen pounds of lifting, pushing and pulling. (*Id.*) That same day, Mr. Noble completed Plaintiff's last work

---

[4] The parties' dispute the appropriate demand level for a "heavy equipment maintenance mechanic." Defendant contends that because Plaintiff's job required him to lift 70 pounds (as evidenced in Defendant's proposed job description discussed in footnote 1), his job should be classified as a "heavy demand level." (Def. SOF ¶ 11.) Plaintiff argues that based on the Dictionary of Occupational Titles, "heavy equipment mechanic" is classified as a medium demand level job. (Pl. Resp. Def. SOF ¶ 11.) Additionally, Plaintiff argues that he was capable of lifting 70 pounds. (Pl. SOF ¶ 74.) At this time, we find that there is a genuine issue of material fact as to the appropriate demand level of Plaintiff's job along with Plaintiff's ability to lift 70 pounds. Because of this, we do not determine the appropriate demand level for a "heavy equipment maintenance mechanic."

conditioning note, indicating that Plaintiff could lift 60 pounds from floor to chair over a course of ten repetitions but that Plaintiff was reporting lower back pain with radicular symptoms into the left buttock and that such pain was a four out of ten on the functional pain scale, meaning it was moderate pain. (*Id*. ¶¶ 25, 52.)

Two days later, on November 6, 2013, Dr. Singh's office sent a final report to Defendant's workers' compensation office. (*Id*. ¶ 26.) This report released Plaintiff to "full duty without restriction," effective November 13, 2013. (*Id*.) The release noted that Plaintiff's "job requires for him to lift heavy; however he only met medium demands." (*Id*.) Dr. Singh was never provided a copy of Plaintiff's job description prior to releasing him without restriction. (Def. SOF ¶ 50.) Plaintiff did inform Dr. Singh that he was a Heavy Equipment Mechanic and that his job required him to lift "heavy" weights, "anywhere from fifty to over a hundred pounds." (Pl. SOF ¶ 75.) Since his November 6 appointment, Plaintiff has not returned to Dr. Singh or any other medical professional with back complaints. (*Id*. ¶ 73.)

### d. Plaintiff's Attempt to Return to Work

On November 12, 2013, in line with Reserve Marine's policy[5], Plaintiff came to Reserve Marine with Dr. Singh's unrestricted release and expressed his intention to return as a Heavy Equipment Maintenance Mechanic. (Def. SOF ¶ 29; Pl. SOF ¶ 77.) Plaintiff handed the paperwork to Reserve Marine's Operations Manager, Rob Boswell. (Def. SOF ¶ 29.) Mr. Boswell said he was happy to see Plaintiff back and that he would pass along Plaintiff's paperwork to Dennis Stropko, Defendant's primary point of contact for workers' compensation cases. (*Id*. ¶¶ 3; 30.) Boswell did pass along Plaintiff's release to Stropko, who then contacted

---

[5] "If an employee is absent for more than 10 working days, that employee must provide a release from the treating physician, which indicates that the employee no longer has any medical restrictions." (Def. SOF ¶ 5.)

Plaintiff and informed him that Plaintiff's return to work was "out of the blue," and, in

accordance with company policy, Stropko would reach out to Dr. Singh and Reserve Marine's

insurance carrier and get back to Plaintiff with next steps.[6]  (*Id*.)  After speaking with Stropko,

Plaintiff contacted his union representative, Mike Corrigan, to inform him of his attempt to

return to work.[7]  (Pl. SOF ¶ 79.)  To this date, Defendant has not contacted Plaintiff concerning a

physical examination, an independent medical examination or a functional capacity exam.

(*Id*. ¶¶ 86-88.)  Prior to this litigation, Defendant never informed Plaintiff what additional

paperwork he needed to provide to Defendant to return to work.[8]  (*Id*. ¶ 85.)

### e.  Dr. Singh's Release

Despite receiving Dr. Singh's November 6 release, Stropko was concerned that Plaintiff

was not physically qualified to perform the job of Heavy Equipment Maintenance Mechanic

given his significant physical restrictions two days earlier in Dr. Singh's November 4 report.

(Def. SOF ¶ 40.)  Stropko was also concerned that Plaintiff could not perform "100% of the

essential functions" of his job as required by Reserve Marine policy.  (*Id*.)  Stropko was

"extremely hesitant to just allow [Plaintiff] to return to work without any real follow up from an

occupational health professional that is aware of the type of work [Plaintiff] would be

performing."  (*Id*. ¶ 34.)  After receiving the release from Dr. Singh, Stropko considered Plaintiff

"not yet released."  (Pl. SOF ¶ 82.)

---

[6] Along with providing a doctor's note, Reserve Marine policy states that prior to returning to work after an injury, "the employee must submit to a Return to Work/Fitness for Duty medical/drug screen evaluation by our Occupational Medical Provider, prior to being released back to their position.  In these cases, the employee must be able to perform 100% of the essential functions of their job – they must be 'Fit for Duty.'"  (*Id*. ¶ 5.)
[7] Stropko and Tolin knew that Plaintiff was in contact with the union.  (*Id.*)
[8] It is common in workers' compensation cases for an employer to obtain a second opinion if there are questions regarding a need for continuation of care.  (*Id*. ¶ 85.)

Stropko contacted Defendant's workers' compensation claims representative to clarify Dr. Singh's release. (Def. SOF ¶ 36.) The claim representative informed Stropko that "the date on which a worker is released to work is not under our control, it is under the doctor's." (Pl. SOF ¶ 83.) Stropko asked the claims representative to send the physical demands of Plaintiff's job to Dr. Singh to clarify whether Plaintiff's full duty release would allow him to perform his job. (Def. SOF ¶ 36.) At this time, the claims representative told Stropko that Dr. Singh reported to the claims department that he had released Plaintiff to full duty based on Plaintiff's request. (*Id.*) Defendant's workers' compensation department again followed up with Dr. Singh in March 2014 as to the reasons for the full duty release. (*Id.* ¶37.) In response to this inquiry, Dr. Singh explained to the insurance carrier that he had released Plaintiff because Plaintiff had "requested to be released to full duty [without] restrictions." (*Id.* ¶ 39.) On February 12, 2015, Dr. Singh sent a second letter to the insurance carrier clarifying his April 2014 letter. (*Id.* ¶ 47.) In this letter, Dr. Singh informed the insurance carrier that he believed Plaintiff could meet the physical demands of his job. (*Id.* ¶ 48.) Dr. Singh further stated that in determining whether to release a patient to full duty, he considers a patient's range of motion, his neurological strength, his lack of significant pain, and his progress in a work conditioning program. (*Id.* ¶ 51.) Finally, Dr. Singh informed the insurance carrier that based on these factors, he was confident that Plaintiff could return to work and meet heavy demand levels. (*Id.*) Dr. Singh did not outline these factors in his initial April 1, 2014 letter. (*Id.*)

### f.  Plaintiff's Workers' Compensation Claim and Settlement

Beginning in December 2011, Stropko began speaking with Defendant's insurance carrier concerning Plaintiff's claim. (Pl. SOF ¶¶ 66–67.) Later, on April 11, 2012, in regards to Plaintiff's claim, Stropko wrote to the insurance carrier: "please note that we take a very active

and aggressive position when it comes to [workers' compensation] issues" and that "we take it very personally when attempts are made to take advantage of the system." (*Id.* ¶ 66.) In that same correspondence, Stropko labeled Plaintiff's claim as being of a "questionable nature." (*Id.*) Two weeks later, Stropko wrote to Defendant's insurance carrier: "Illinois [workers' compensation] . . . costs us a lot of money as an employer in [Illinois] – It goes way beyond annoying!!!" (*Id.* ¶ 65.) Additionally, Stropko informed Defendant's claims department that Plaintiff had a "chronic history of back issues/problems," "has been treating for some time for a variety of back issues-both work and non-work related," had a "long history of chronic back problems," and had "ongoing back issues." (*Id.* ¶ 71.) In reality, Plaintiff did not have a history of chronic back issues and before his December 2011 injury had never treated his back for any length of time. (*Id.* ¶ 72.)

Plaintiff's workers' compensation claim was settled on December 4, 2014. (Def. SOF ¶ 54.) Plaintiff accepted a $104,367.00 lump sum representing a thirty percent loss of the use of his body as a whole. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the

nonmoving party "must go beyond the pleadings" and identify portions of the record

demonstrating that a material fact is genuinely disputed. *Id*.; Fed. R. Civ. P. 56(c).

In deciding whether summary judgment is appropriate, we must accept the nonmoving

party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*,

477 U.S. at 244, 106 S. Ct. at 2513. We do not "judge the credibility of the witnesses, evaluate

the weight of the evidence, or determine the truth of the matter. The only question is whether

there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 625, 529 (7th Cir. 2009)

(citing *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511). "Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue

for trial." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (citation omitted).

## ANALYSIS

Plaintiff alleges disability discrimination under the ADA and the IHRA, age

discrimination under the ADEA and the IHRA and a claim for state law retaliatory discharge.

We discuss each claim in turn, below.

### A. Disability discrimination

Plaintiff brings both federal and state law claims of disability discrimination. We first

address Plaintiff's federal claim.

#### a. Disability discrimination pursuant to 42 U.S.C. § 12112

The Americans with Disabilities Act prohibits employers from discriminating against "a

qualified individual because of his disability." 42 U.S.C. § 12112(a); *Buie v.*

*Quad/Graphics, Inc.,* 366 F.3d 496, 502 (7th Cir. 2004). Under the ADA, to succeed on a

disability discrimination claim, Plaintiff must prove that (1) he was disabled within the meaning

of the ADA, (2) he is qualified to perform the essential functions of the job, with or without

reasonable accommodations, and (3) Defendant took an adverse employment action against him because of his disability or without making a reasonable accommodation for it. *Basden v. Prof'l Transp., Inc*., 714 F.3d 1043, 1037 (7th Cir. 2013).

> ### i. *"Regarded as" disabled*

In order to qualify for protections under the ADA, Plaintiff must first prove that he is disabled. *Basden*, 714 F.3d at 1037. A disability is defined as (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102. Plaintiff claims that he is not disabled, but that he was "regarded as" disabled by Defendant. (Def. SOF ¶ 56.) A person is "regarded as" disabled by his employer if he "has been subjected to an action prohibited under this chapter because of actual or perceived physical or mental impairments whether or not the impairment limits or is perceived to limit a major life activity.[9]" 42 U.S.C. § 12102(3)(1); *Stragapede v. City of Evanston*, 69 F. Supp. 3d 856, 863 (N.D. Ill. 2014); *see also* 29 C.F.R. § 1620.2(l) (stating that prohibited actions under the "regarded as" prong include "refusal to hire, demotion, placement on

---

[9] Defendant contends that there is a Circuit split concerning the appropriate standard for a "regarded as" claim. (Mem. in Supp. of Mot. for Summ. J at 6.) Defendant alleges that courts have held that an individual satisfies the "regarded as" prong only when he can prove that the employer believes that he has an impairment that substantially limits a major life activity. (*Id.*) We disagree. Congress changed the "regarded as" standard in 2008 amendments to the ADA. *See* ADA Amendments Act of 2008, Pub.L. 110–325, 122 Stat. 3553 (2008). Before the amendments, to establish "regarded as" liability, the plaintiff had to show that the employer believed that he was substantially limited in his ability to perform a major life activity. *Steffen v. Donahoe*, 680 F.3d 738, 744–45 (7th Cir. 2012). Under the previous definition, "an employee was not 'regarded as' disabled by his employer unless his employer believed he satisfied the definition of 'disabled' under the ADA." *Id.* The amendments establish that the employer need not believe that the plaintiff is substantially limited in a major life activity. 42 U.S.C. § 12102(3). Now, the "regarded as" prong only requires that the employer took adverse action against the plaintiff because of an actual or perceived impairment. *Id.* Because Plaintiff alleges discrimination after the 2008 Amendments took effect, we rely on the current definition of "regarded as" in § 12102(1)(C).

involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment").

In its motion for summary judgment, Defendant contends that there is no evidence that Defendant regarded Plaintiff as disabled. (Mem. ISO MSJ at 7.) We disagree. Prior to his December 2011 injury, Stropko[10] believed that Plaintiff called off work because his back was sore and that Plaintiff wore a weight belt because of a chronic history of back issues/problems. (Def. SOF ¶ 71.) Additionally, in 2013, Stropko made multiple comments to Defendant's workers' compensation office concerning Plaintiff's "history of chronic back issues/problems." (*Id*.) Construing all inferences in favor of the Plaintiff, a reasonable jury could certainly find that Plaintiff was "regarded as" disabled by Defendant.

### ii. *Qualified to perform the essential functions of his job*

Next, Defendant contends that even if Plaintiff is "disabled" under the ADA, summary judgment should be granted because Plaintiff "cannot prove he is a 'qualified individual.'" (Mem. in Supp. Mot. for Summ. J. at 9.) Specifically, Defendant argues that Plaintiff "was not cleared to perform the essential functions of his job." (*Id*.) Essential functions are "the fundamental job duties of the employment position." 29 C.F.R. § 1620.2(n). EEOC regulations instruct that:

> Evidence of whether a particular function is essential includes, but is not limited to: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs.

---

[10] Plaintiff argues that Dennis Stropko is a "relevant decisionmaker." (Resp. at 5.) Defendant does not contest this point and it is undisputed that Stropko is the primary point of contact for workers' compensation cases. (Def. SOF ¶ 3.)

*Id.* Defendant argues that a "Heavy Equipment Maintenance Mechanic" must lift 70 pounds. (Mem. ISO MSJ at 10.) Next, Defendant asserts that Dr. Singh's release without restriction did not release Plaintiff to lift 70 pounds. (*Id.*) Plaintiff, on the other hand, asserts that Dr. Singh's release was entirely without restriction, and thus, did release Plaintiff to lift 70 pounds. (Pl. SOF ¶ 82.) We need not decide whether lifting 70 pounds is an essential function of the Heavy Equipment Maintenance Mechanic position because we find that there is a genuine issue of material fact as to whether Dr. Singh's release authorized Plaintiff to lift 70 pounds. In his November 6 release, Dr. Singh authorized Plaintiff's return to work "full duty without restriction." (Def. SOF ¶ 26.) In that same release, however, Dr. Singh noted that Plaintiff's "job requires for him to lift heavy; however he only met medium demands." (*Id.*) While Dr. Singh was never provided a copy of Plaintiff's job description, Plaintiff told Dr. Singh that he was a Heavy Equipment Maintenance Mechanic and that his job required him to lift "heavy" weights, "anywhere from fifty to over a hundred pounds." (*Id.* ¶ 50; Pl. SOF ¶ 75.) Additionally, Dr. Singh initially reported that he released Plaintiff to full duty based on Plaintiff's request, (Def. SOF ¶ 39), yet Dr. Singh later informed Defendant that he believed Plaintiff could meet the physical demands of his job based on Plaintiff's range of motion, neurological strength, lack of significant pain, and his progress in his work conditioning program. (*Id.*) Finally, as of November 4, 2013, Mr. Noble reported that Plaintiff could lift 60 pounds from floor to chair over a course of ten repetitions. (*Id.* ¶ 25.) According to Defendant's insurance carrier, "the date on which a worker is released to work is not under our control, it is under the doctor's." (Pl. SOF ¶ 83.)

Based on the undisputed facts, we find there is a genuine issue of fact as to whether Plaintiff was qualified to perform the essential functions of a Heavy Equipment Maintenance Mechanic.

### iii. Direct Threat

Defendant further contends that Plaintiff was a "direct threat," and, accordingly, was not qualified under the ADA. (Mem. ISO MSJ at 10.) Under the ADA, "[a]n individual is not qualified if he presents a 'direct threat' to his own health or that of others." *Darnell v. Thermafiber, Inc.*, 417 F.3d 657, 660 (7th Cir. 2005). The determination that Plaintiff poses a direct threat must be premised upon "a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence, and upon an expressly individualized assessment of the individual's present ability to safely perform the essential functions of the job." *Id.* (citing *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86, 122 S. Ct. 2045, 2053 (2002)). A defendant moving for summary judgment bears the burden of showing "that the evidence on the question of direct threat is so one-sided no reasonable jury could find for [the non-moving party]." *Branham v. Snow*, 392 F.3d 896, 907 (7th Cir. 2004). The assessment of risk "must be based on medical or other objective evidence" and the determination that a significant risk exists must be objectively reasonable. *Bragdon v. Abbott*, 524 U.S. 624, 649, 118 S. Ct. 2196, 2210 (1998).

Defendant has offered no medical or objective evidence suggesting that Plaintiff was a *significant* risk to himself or to others at Reserve Marine. To the contrary, the only medical testimony offered, that of Dr. Singh, suggests that Plaintiff was qualified to

perform his job.  (Def. SOF ¶ 39.)  Accordingly, we deny Defendant's motion for summary judgment on the grounds that Plaintiff was a direct threat.

### iv.  Discrimination on the basis of the disability

Next, we consider Defendant's contention that Plaintiff has failed to prove that Defendant did not recall Plaintiff because of his disability.  To prove that Defendant did not allow Plaintiff to return to work because of his disability, Plaintiff may rely on either of two distinct evidentiary methods; the direct method or the indirect method.  *Bunn v. Khoury Enter. Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).  Under the direct method, Plaintiff may establish intentional discrimination by producing evidence that his disability motivated the decision to terminate him; this evidence may be either direct or circumstantial.  *Buie,* 366 F.3d at 503; *DeLuca v. Winer Indus., Inc*., 53 F.3d 793, 797 (7th Cir. 1995).  Direct evidence of discrimination is essentially, "an admission by the decision-maker that his actions were based upon the prohibited animus," while circumstantial evidence is evidence that "allows a jury to infer intentional discrimination."  *Buie*, 366 F.3d at 503.  Circumstantial evidence that will defeat a motion for summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.  *Dickerson v. Board of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing *Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 586–87 (7th Cir. 2011); *Burnell v. Gates Rubber Co.,* 647 F.3d 704, 708 (7th Cir. 2011)).

The indirect method for proving disability discrimination follows the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, (1973). Under this method, Plaintiff has the burden of establishing a prima facie case of discrimination by showing that: (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Dickerson,* 657 F.3d at 601. If these elements are established, discrimination is inferred and the burden of production shifts to Defendant to raise a legitimate, nondiscriminatory reason for the failure to recall. *Id.* Once a legitimate reason is offered, the inference of discrimination is removed, and Plaintiff must establish that the offered reason is in fact a pretext for intentional discrimination. *Id*.

Plaintiff alleges that he has presented sufficient evidence under the direct method of proof to survive summary judgment. (Resp. at 5.) To survive a motion for summary judgment under the direct approach, Plaintiff "must present sufficient evidence to allow a rational jury to reasonably conclude that, but for [his] disability . . . [Defendant] would not have [failed to recall him.]" *Cleveland v. Prairie State Coll.*, 208 F. Supp. 2d 967, 980 (N.D. Ill. 2002) (citing *Bekker v. Humana Health Plan, Inc*., 229 F.3d 662, 670–71 (7th Cir. 2000)). Plaintiff contends that a variety of false statements by Dennis Stropko concerning Plaintiff's perceived disability could be found to amount to direct proof of disability discrimination. (Resp. at 5.) We agree. In a series of emails to Defendant's workers' compensation office, Stropko repeatedly mentions Plaintiff's "chronic history of back issues/problems" when discussing Plaintiff's return to work. (*See* Dkts. 58–59, Ex. 17–19.) In an April 5, 2012 email, Stropko wrote:

"[a]dditionally, where are you on prior medical records . . . as discussed, we believe he

has been treating for some time for a variety of back issues – both work and non-work

related, and that history should be very important to this claim or at least have some

relevance." (Dkt. 55, Ex. 19.) Later, in a January 2012 email, Stropko again alludes to

Plaintiff's perceived "pre-existing issues:" "And they are aware of his pre-existing issues

as well as other history. Just sit tight and hold on . . . it's going to be bumpy!" (Dkt. 59,

Ex. 21.) Based on these emails, we find that there is genuine issue of material fact as to

Defendant's intent in failing to rehire Plaintiff.[11] *See also Cleveland*, 208 F. Supp. 2d at

982 (finding that defendant's intent as evidenced in a series of emails and employment

decisions implemented thereafter, raise a genuine issue of fact that precludes granting

defendant summary); *AFL–CIO v. Doherty*, 169 F.3d 1068, 1072 (7th Cir. 1999)

("[d]irect evidence-evidence that can be interpreted as an acknowledgment of

discriminatory intent by defendant or its agents" can create a triable issue of intentional

discrimination sufficient to survive summary judgment).

### b.  Disability discrimination pursuant to the Illinois Human Rights Act

Along with his ADA claim, Plaintiff also seeks relief for alleged disability discrimination

under the Illinois Human Rights Act.  The IHRA, adopted in 1979, prohibits "unlawful

---

[11] Plaintiff also contends that he has presented sufficient circumstantial evidence of Defendant's discriminatory motive to survive summary judgment, specifically, evidence proving Defendant's reason for failing to recall was pretextual.  (Resp. at 12.)  Plaintiff argues that based on Dr. Singh's unrestricted release, along with Dr. Singh's and Mr. Noble's reports, Defendant's reason for failure to recall, absence of medical clearance, is obviously false.  (*Id*.).  Because we find that Plaintiff has provided sufficient direct evidence of disability discrimination we do not specifically address Plaintiff's circumstantial evidence.  We do note, however, that in line with our analysis in (A)(a)(ii), we find there is a genuine issue of fact as to whether Plaintiff was qualified to perform the essential functions of his job.  Because there is a genuine issue of fact as to Plaintiff's qualifications, we also find there is a genuine issue of fact as to whether Defendant's reason for failing to recall was pretextual.

discrimination," which the Illinois courts have interpreted to mean discrimination against an individual on the basis of race, religion, color, ancestry, national origin, age, marital status, sex, or handicap.  775 Ill. Comp. Stat. 5/1–102; *see also De v. City of Chicago*, 912 F. Supp.2d 709, 730 (N.D. Ill. 2012); *Blount v. Stroud*, 232 Ill.2d 302, 309, 328 Ill. Dec. 239, 244 (2009); *Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 916, 344 Ill. Dec. 94, 108–09 (1st Dist. 2010).  Specifically, the Act makes it a civil rights violation "[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination."  775 Ill. Comp. Stat. 5/2–102(A).

### i. Jurisdictional Concerns

Defendant does not raise jurisdictional concerns, however, we find it prudent to discuss our jurisdiction over Plaintiff's IHRA state law claims.  While IHRA claims initially were reserved to the Illinois Human Rights Commission,  following a 2008 amendment, district courts within this Circuit have held that federal courts do have subject matter jurisdiction over IHRA claims pursuant to 28 U.S.C. § 1367.  *De*, 912 F. Supp. 2d at 732; *Massenberg v. A & R Sec. Servs., Inc*., No. 10–CV–7187, 2011 WL 1792735, at *5 (N.D. Ill. May 11, 2011) ("This court finds . . . that federal courts can exercise supplemental jurisdiction over IHRA claims."); *Carr v. Avon Prods., Inc*., No. 10–CV–3124, 2011 WL 43033, at *2 (N.D. Ill. Jan. 6, 2011) ("The Court's supplemental jurisdiction is defined by 28 U.S.C. § 1367, not the IHRA . . . .  Thus, the Court has supplemental jurisdiction over [the IHRA claims] and, at this point, no reason not to exercise it.").

In line with other decisions in this district court, we hold that IHRA claims may be heard in federal court. Next, we must determine whether we have supplemental jurisdiction over Plaintiff's IHRA state law claim. We find that we do. It is undisputed that we have original jurisdiction over Plaintiff's ADA and ADEA claims, as those claims arise under federal law. 28 U.S.C. § 1331. Because we have original jurisdiction over Plaintiff's ADA and ADEA claims, we may also exercise supplemental jurisdiction "over all other claims that are so related in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In determining whether a claim forms part of the same case or controversy, we consider whether the claims "derive from a common nucleus of operative facts." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65, 118 S. Ct. 523, 529–30 (1997). We conclude that Plaintiff's IHRA do derive from a common nucleus of facts as his ADA and ADEA claims because they are all based upon the same allegedly discriminatory conduct, by the same Defendant, over the same time period. Therefore, we find that we have subject matter jurisdiction over Plaintiff's IHRA claim and proceed with an analysis of that state law claim.

### ii. Disability discrimination

The Illinois Supreme Court instructs that in evaluating claims of discrimination brought under the IHRA, courts should apply the same test employed by federal courts in evaluating causes of action brought pursuant to Title VII of the Civil Rights Act of 1964, the ADEA, and the ADA. *Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill.2d 172, 178, 137 Ill. Dec. 31, 34 (1989) (internal citations omitted); *Van Campen v. Int'l Bus. Mach. Corp.,* 326 Ill. App. 3d 963, 970, 762 N.E.2d 545, 551 (1st Dist. 2001). Based on our analysis above, we find that because Plaintiff's ADA claim survives summary judgment, so too does his IHRA

disability discrimination claim.  Accordingly, we deny Defendant's motion for summary

judgment on Plaintiff's IHRA disability discrimination claim.

## B. Age Discrimination

Plaintiff brings both federal and state law claims of age discrimination.  As outlined

above, we find that we do have jurisdiction over his IHRA state law claim.  Additionally,

Plaintiff's IHRA claim is evaluated under an ADEA test.  *Zaderaka,* 131 Ill.2d at 137,

137 Ill. Dec.at 34.  Because of this, we discuss Plaintiff's federal and state law claims as one.

### a.  Age discrimination pursuant to 29 U.S.C. § 621 and the IHRA

The ADEA prohibits employers from engaging in discrimination on the basis of an

employee's age.  29 U.S.C. § 623(a)(1).  Like Plaintiff's disability discrimination claims, an

employee may establish age discrimination under the ADEA using the direct or indirect methods

of proof previously discussed.  "In either case, the bottom line question is whether the plaintiff

has proved intentional discrimination."  *Martino v. MCI Commc'ns Serv., Inc.*,

574 F.3d 447, 452 (7th Cir. 2009) (internal citations omitted).

Plaintiff alleges that he has presented both direct and indirect evidence of age

discrimination.  (Resp. at 12.)  First, Plaintiff asserts that two statements by Stropko directly

establish his ADEA claim.  (*Id.*) ("Stropko falsely claimed that he and Nutall had talked about

"getting old" and having "sore backs.")  We disagree.  "[I]solated comments that are no more

than 'stray remarks' in the workplace are insufficient to establish that a particular decision was

motivated by discriminatory animus."  *Merillat v. Metal Spinners, Inc*., 470 F.3d 685, 694

(7th Cir. 2006).

Next, under the direct method of proof, Plaintiff argues that he has presented

circumstantial evidence establishing discriminatory intent by presenting statistics that similarly

situated employees outside of the protected group systematically received better treatment. (Mem. ISO MSJ at 12.) Additionally, Plaintiff alleges that he has provided sufficient evidence of discriminatory behavior towards other employees in the protected group. (*Id.*) Plaintiff cites statistics showing that the average age of all Reserve Marine employees is 45, while the average age of employees terminated for reasons other than voluntary leave is 52 years old. (*Id.* ¶ 11.) Plaintiff's evidence fails to support his claim of age discrimination. Statistics can only show a relationship between an employer's decisions and the affected employee's traits; they do not show causation. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). The occurrence of adverse employment actions may correlate to older employees for reasons other than intentional age discrimination. *Id.* "Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference" of discrimination. *Id.* A plaintiff must show "disparate treatment between comparable individuals." *Id.* (citing *Furr v. Seagate Tech., Inc.* 82 F.3d 980, 987 (10th Cir. 1996)).

Because we find that Plaintiff has not presented sufficient direct or circumstantial evidence to support his age discrimination claim, we look to his indirect proof. Plaintiff argues that, employing the *McDonnell Douglas* framework, he has established a prima facie case of age discrimination. (Resp. at 11); *see also McDonnell Douglas*, 411 U.S. 792, 93 S. Ct. 1817. Concerning the first three elements of a prima facie case of discrimination, he asserts that it is undisputed that: (1) he is a member of a protected class, (2) he performed reasonably on the job in accordance with his employer's legitimate expectations, and (3) despite his reasonable performance, he was subjected to an adverse employment action. (Resp. at 11.) Finally, he alleges that he has provided evidence of similarly situated younger mechanics who still are

employed by Defendant; Plaintiff was the oldest mechanic at Reserve Marine and all younger mechanics are still working for Defendant. (*Id*.)

We focus on the fourth element, whether Plaintiff has presented a similarly situated comparator. *See Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014) ("[W]ithout similarly situated comparators, no inference of discrimination arises and [Plaintiff's] disparate treatment claims fail under the indirect method.") We find that Plaintiff has not presented a similarly similar comparator. "[T]he proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision." *Good v. Univ. of Chi. Med. Ctr*., 673 F.3d 670, 675 (7th Cir. 2012). To support his claim, Plaintiff generally asserts that since he was the oldest mechanic at Reserve Marine, all other current employers are similarly situated employees who received preferential treatment. (Resp. at 11.) This blanket assertion does not provide sufficient proof to survive summary judgment. Plaintiff does not provide evidence that these younger employers are "directly comparable" to Plaintiff in "all material respects" and with "other possible explanatory variables" removed. *Good*, 673 F.3d at 692. Because Plaintiff has failed to raise a material issue of fact concerning his age discrimination claim, we grant Defendant's motion for summary judgment on both Plaintiff's ADEA and IHRA age discrimination claims.

### C. Retaliatory Discharge

Finally, Plaintiff brings a claim for state law retaliatory discharge, alleging that Defendant did not allow Plaintiff to return to work because of his workers' compensation claim. (Resp. at 13.) The Illinois Supreme Court determined that a cause of action exists for a retaliatory discharge for exercising rights under the Workers' Compensation Act. *Phillips v. Cont'l Tire The Americas, LLS*, 743 F.3d 475, 477 (7th Cir. 2014) (internal citations omitted);

*Kelsay v. Motorola, Inc*., 74 Ill.2d 172, 181, 23 Ill. Dec. 559, 563 (1978). Claims for retaliatory discharge require that a plaintiff is actually terminated. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) ("Discharge in an employment context is commonly understood to mean the release, dismissal, or termination of an employee.") (internal citation omitted); *Basek v. Tri-State Fire Prot. Dist.*, 69 F. Supp. 3d 845, 854 (N.D. Ill. 2014) (declining to expand tort of retaliatory discharge to a demotion because the Illinois Supreme Court underscored the "element of discharge" as "essential to the tort," and federal and state courts in Illinois have continued to apply that principle) (internal citations omitted); *Metzger v. DaRosa*, 209 Ill.2d 30, 44, 282 Ill. Dec. 148, 146 (2004) ("We have [ ] never recognized a common law tort for any injury short of actual discharge."); *Graham v. Commonwealth Edison Co*., 318 Ill. App. 3d 736, 744, 252 Ill. Dec. 320, 328 (2000) ("The law in Illinois is clear that Illinois courts have refused to expand the theory of retaliatory discharge beyond the element of actual termination."). Based on the undisputed facts, we find that Plaintiff was not actually terminated by Defendant. (Def. SOF ¶ 42.) However, it is also undisputed that Plaintiff has not been permitted to return to work. (Pl. SOF ¶ 90.)

Along with a retaliatory discharge claim, Illinois law recognizes a second cause of action available to employees under the Workers' Compensation Act.[12] "Where the employee has not been fired, . . . a regular employee on leave or temporary layoff may [sic] sue for retaliatory failure to recall." *Webb v. Cty. of Cook*, 275 Ill. App. 3d 674, 678, 211 Ill. Dec. 893, 896 (1st Dist. 1995); *see also Shelton v. OSF St. Francis Med. Ctr*., 2013 IL App (3d) 120628, 991 N.E.2d 548, 554 (3rd Dist. 2013) (discussing the distinctions between a retaliatory discharge

---

[12] Section 4(h) of the Workers' Compensation Act provides: "It shall be unlawful for any employer . . . to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity[,] an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h) (West 2004).

claim and a retaliatory failure to recall claim). Despite formally asserting a retaliatory discharge claim, we find that Plaintiff seeks relief for a retaliatory failure to recall and thus will analyze his claim under a failure to recall framework. *See Basek,* 69 F. Supp. 3d at 855 ("There are situations where retaliation couched as a demotion or some other unfavorable employment action may be, for all intents and purposes, a discharge."); *Herman v. Power Maint. & Constructors, LLC*, 388 Ill. App. 3d 352, 363, 328 Ill. Dec. 192, 202 (4th Dist. 2009) (analyzing plaintiff's retaliatory discharge claim as a retaliatory failure to recall claim because the "difference between a failure to recall and a discharge is 'semantics,' germane point is that plaintiff was denied work"); *Feldman v. Olin Corp*., No. 09-168-GPM, 2010 WL 5092384, at *8 (S.D. Ill. 2010) (proceeding on plaintiff's retaliatory discharge claim as a failure to recall claim because plaintiff alleged in complaint that defendant "refused to return him to work"); *Motsch v. Pine Roofing Co*., 178 Ill. App. 3d 169, 176, 127 Ill. Dec. 383, 387 (1st Dist. 1988) (refusal to recall discussed in context of retaliatory discharge, as both force employees "to choose between their jobs and seeking their rights").

To survive summary judgment on a retaliatory failure to recall claim, Plaintiff must show: (1) that he was the Defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that Defendant refused to recall Plaintiff because of his workers' compensation claim. *Cochrum v. Old Ben Coal Co.,* 287 Ill. App. 3d 219, 227, 678 N.E.2d 1093, 1098 (1st Dist. 1997). "Causality does not exist if the basis for the refusal to recall is valid and nonpretextual." *Id*. "Plaintiff need not present direct evidence of a retaliatory motive; he can carry his burden of proof by showing that Defendant's explanation for refusing to recall him is not believable or that if raises a genuine issue of material fact as to whether defendant was retaliating against him." *Herman,*

388 Ill. App. 3d at 364, 904 N.E.2d at 862 (denying defendant's motion for summary judgment where defendant argued that plaintiff was fired for substandard job performance but a doctor had lifted plaintiff's medical restrictions).

Elements one and two are undisputed; Plaintiff was Defendant's employee prior to his injury and Plaintiff filed a workers' compensation claim after his injury in December 2011. (Def. SOF ¶¶ 7,12; Pl. SOF ¶ 65.)  We now consider whether Plaintiff has sufficiently alleged a causal connection between his workers' compensation claim and Defendant's refusal to recall him.  We find that he has.

The record reveals a genuine issue of fact as to whether Defendant's stated reason for refusing to recall Plaintiff, absence of a valid medical release, was a pretext for illegal conduct. Dr. Singh, the only doctor on the record, released Plaintiff without restriction.  (Def. SOF ¶ 26.) Prior to this release, Plaintiff informed Dr. Singh that he was a Heavy Equipment Maintenance Mechanic and that his job required him to lift "anywhere from fifty to over a hundred pounds." (Pl. SOF ¶ 75.)  Defendant's claims representative indicated that "the date in which a worker is released to work is not under our control, it is under the doctor's."  (*Id*. ¶ 83.)  Finally, Defendant contends that Plaintiff was not returned to work because Defendant was concerned that Plaintiff "could not perform 100% of the essential functions of his job," yet at no time requested that Plaintiff submit to any sort of physical examination by a Marine Reserve doctor.  (Def. SOF ¶40; Pl. SOF ¶¶86-88.)

In addition, we find that Plaintiff has offered sufficient evidence for a jury to find that Defendant did not recall Plaintiff due to his workers' compensation claim.  In an email to Defendant's workers' compensation department concerning Plaintiff's claim, Stropko labeled Plaintiff's claim as one of a "questionable nature."  (Pl. SOF ¶ 66.)  Additionally, in regards to

Plaintiff's claim, Stropko stated: "Illinois [workers' compensation] . . . costs us a lot of money as an employer in IL – It goes way beyond annoying!"  (*Id*. ¶ 65.)  In that same email, Stropko informed Defendant's insurance carrier that: "we take a very active and aggressive position when it comes to [workers' compensation] issues" and that "we take it very personally when attempts are made to take advantage of the system."  (*Id*. ¶ 66.)  These comments create a plausible inference that Stropko did not believe Plaintiff's workers' compensation claim or resented it.

Based on the undisputed facts, we find that Plaintiff has sufficiently supported a claim for retaliatory failure to recall and deny Defendant's motion for summary judgment on this count.

## CONCLUSION

For the reasons stated above, we deny Defendant's motion for summary judgement as to Plaintiff's claims for disability discrimination under both the Americans with Disabilities Act and the Illinois Human Rights Act along with Plaintiff's claim for retaliatory failure to recall under Illinois common law.  We grant Defendant's motion for summary judgment as to Plaintiff's claims for age discrimination under both state and federal law.  It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated:  December 22, 2015
        Chicago, Illinois